IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

T.C. MATHIS                                                      PLAINTIFF
*on behalf of*
A MINOR CHILD, K.M.

vs.                      Civil No. 1:07-cv-01080

MICHAEL J. ASTRUE                                   DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

      T.C. Mathis ("Plaintiff") brings this action on behalf of a minor child, K.M., and pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying K.M.'s application for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

      Plaintiff protectively filed an application for SSI on behalf of his son, K.M., on October 7, 2004. (Tr. 12, 49-52). Plaintiff alleged K.M. was disabled due to a learning disability, Attention Deficit Disorder ("ADD"), bed wetting, tongue chewing, and sickle cell anemia. (Tr. 33, 321-323).

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

Plaintiff alleged K.M.'s onset date was April 7, 1997. (Tr. 49).

This application was initially denied on January 20, 2005 and was denied again on reconsideration on July 28, 2005. (Tr. 37-40). On September 7, 2005, Plaintiff requested an administrative hearing on this SSI application, claiming the following: "The decision is inconsistent with the way I [K.M.] feel due to a learning disability, ADD, bed wetting, chewing on tongue and sickle cell anemia that I live with on a daily basis." (Tr. 33-34). The administrative hearing was held in El Dorado, Arkansas on June 14, 2006. (Tr. 296-326). Plaintiff and K.M. were present and were represented by counsel, R. Theodor Stricker, at this hearing. *See id.* Plaintiff and K.M. testified at this hearing. *See id.* At the time of this hearing, K.M. was fifteen years (15) old and was in the tenth grade in school. (Tr. 300).

On December 27, 2006, the ALJ entered an unfavorable decision denying Plaintiff's request for disability benefits for K.M. (Tr. 9-26). In this opinion, the ALJ determined K.M. was born on August 3, 1990 and was an adolescent on October 7, 2004, the date the application was filed and was an adolescent on the date of the ALJ's decision or on December 27, 2006. (Tr. 15, Finding 1). The ALJ determined that K.M. had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to the ALJ's decision. (Tr. 15, Finding 2). The ALJ determined that K.M. had the following severe impairments: learning disorder, borderline intellectual functioning, and Oppositional/Defiant Disorder ("ODD") but that K.M. did not have an impairment or a combination of impairments that met, medically equaled, or were functionally equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Tr. 16-26, Findings 4-5).

Specifically, the ALJ determined that K.M did not have an extreme or marked limitation in any of his six areas of functioning. (Tr. 20-26). The ALJ determined Plaintiff had a less than

2

marked limitation in acquiring and using information; no limitation in attending and completing tasks; a less than marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in caring for himself; and no limitation in his health and physical well-being. (Tr. 20-26). Based upon these findings, the ALJ determined K.M. was not under a "disability," as defined by the Act, from the date Plaintiff's application was filed on October 7, 2004 until the date of the ALJ's decision on December 27, 2006. (Tr. 26, Finding 6).

On March 6, 2007, Plaintiff requested that the Appeals Council review the ALJ's unfavorable disability determination. (Tr. 6-8). On July 10, 2007, the Appeals Council declined to review this determination. (Tr. 3-5). On August 8, 2007, Plaintiff filed the present appeal. (Doc. No. 1). Both parties have filed appeal briefs. (Doc. Nos. 10-11). The parties consented to the jurisdiction of this Court on September 21, 2007. (Doc. No. 4). This case is now ready for decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the

findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

In this case, Plaintiff is seeking disability benefits on behalf of a minor child. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law No. 104-193, 110 Stat. 2105 (1996) (codified at 42 U.S.C. § 1382c(a)(3)(C)), which provided a more stringent standard for determining eligibility for Title XVI childhood disability benefits than the old law and prior regulations required. *See Rucker v. Apfel*, 141 F.3d 1256, 1259 (8th Cir. 1998); 142 Cong. Rec. H8913; H.R. Conf. Rep. No. 725, 104th Cong. 2d Sess. 328 (1996), reprinted in 1996 U.S. Code, Cong. and Ad. News 2649, 2716; Federal Register, Vol. 62, No. 28, p. 6409. Among other things, the new law amended Section 1614(a)(3) of the Act, 42 U.S.C. § 1382c(a)(3), and changed the statutory definition of disability for individuals under age eighteen (18) under the SSI program. Under the new standard, a child is entitled to disability benefits only if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* Pub. L. No. 104-193 § 211(a)(4)(c); 20 C.F.R. § 416.906. The new standard applies to all applicants who filed claims on or after August 22, 1996, or whose claims had not been finally adjudicated by August 22, 1996. Since Plaintiff filed her application in 2004, the new law applies.

Under the new law, the ALJ's disability determination is based upon a three-step analysis. *See* 20 C.F.R. § 416.924. First, the ALJ must determine whether the minor child has engaged in substantial gainful activity. If not, the ALJ will proceed to the second step where the ALJ must consider whether the child has a severe impairment. If a severe impairment is found, the ALJ will

proceed to the third step. At this step, the ALJ, must consider whether the impairment meets, or is medically or functionally equivalent, to a disability listing in the Listing of Impairments ("Listings"), *See* 20 C.F.R. pt. 404, subpt. P, app. 1. A minor child may be disabled if his or her impairment is functionally equivalent to a disability listing, even if the minor child's impairment does not meet the standard requirements for a disability listing. *See* 20 C.F.R. § 416.924(d)(1).

A single method is provided for evaluating whether an impairment is "functionally equivalent" to a disability listing, based upon six domains of functioning. The six domains are the following: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself or herself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). If the minor child claiming benefits has "marked" limitations in two of these domains or an "extreme" limitation in one of these domains, then the child's impairment is functionally equivalent to a disability listing. *See id.* § 416.926a(a); *Moore ex rel. Moore v. Barnhart,* 413 F.3d 718, 721 (8th Cir. 2005).

A "marked" limitation is a limitation that is "more than moderate" and "less than extreme." *See id.* § 416.926a(e); *Lehnartz v. Barnhart,* No. 04-3818, 2005 WL 1767944, at *3 (8th Cir. July 27, 2005). A marked limitation is one that seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e). An "extreme" limitation is more than "marked" and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. *See id.* "Extreme" limitation is the rating the Commissioner gives to the most serious limitations. *See id.*

**3. Discussion:**

The parties do not dispute that K.M. meets the disability requirements of Step One (K.M. has

not engaged in SGA) and Step 2 (K.M.'s impairments are severe) of the analysis. Plaintiff, however, claims the ALJ erred in finding K.M. was not disabled at Step Three of the analysis. (Doc. No. 10, Pages 3-14). Specifically, in his appeal brief, Plaintiff claims: (1) the ALJ's disability determination is not supported by substantial evidence in the record; and (2) the ALJ erred by finding that K.M. did not meet the requirements of Listing 112.05(D). (Doc. No. 10, Pages 6-14). In response, Defendant claims that the ALJ's disability determination is supported by substantial evidence and that the record reflects that "objective testing has consistently shown Claimant to be functioning in the borderline range of intelligence." (Doc. No. 11, Pages 2-9). Because the ALJ's disability determination is not supported by substantial evidence, this Court will only address Plaintiff's first argument.

### A. Substantial Evidence

The medical and documentary evidence in this case consists primarily of testing and evaluation of K.M.'s intellectual and behavioral functioning. (Tr. 211-292). Plaintiff's argument is essentially that the ALJ erred in determining that K.M.'s impairments were not *functionally equivalent* to a disability listing. (Doc. No. 10, Pages 7-12). Therefore, this Court will examine the evidence in this case and determine whether the ALJ's findings regarding K.M.'s six domains of functioning are supported by substantial evidence in the record.

#### (1) Acquiring and Using Information

In his disability determination, the ALJ found that K.M. suffered from a "less than marked limitation in acquiring and using information." (Tr. 20-21). In making this determination, the ALJ primarily relied upon the findings of Dr. John W. Rago, Ed.D., a licensed psychologist. (Tr. 22, 248-252). Dr. Rago examined Plaintiff on July 14, 2005 during a consultative examination. (Tr. 248-252). Dr. Rago found Plaintiff's "rapport, work habits, interest and motivation were adequate; his

6

attention was adequate for testing; and he rarely had to be re-directed on tasks." (Tr. 21). Dr. Rago also found that Plaintiff was not taking any medication. *See id.*

Plaintiff, however, claims that K.M. "has an extreme limitation" in acquiring and using information. (Doc. No. 10, Pages 8-10). Plaintiff claims that the findings of Dr. Rago's and Dr. Charles M. Spellmann, Ph.D. support this finding. *See id.* Specifically, Plaintiff claims that Dr. Rago, who tested K.M. when he had just completed the ninth grade, found that Plaintiff's "scores were at the First Grade level in Reading and Spelling and the Third Grade level in Arithmetic. All were below the expected level based on his Full Scale IQ." *See id.* Also, Dr. Spellmann, who examined K.M. on February 26, 2004, found that Plaintiff's "[r]eading and spelling skills are well in the deficit range." (Tr. 235). Plaintiff claims that both of these findings support his claim that K.M. has an extreme limitation in this domain of functioning.

Additionally, the record reflects that on April 1, 2003, while he was in the sixth grade, K.M. was evaluated by the El Dorado Public School's Special Education Department. During this evaluation, Plaintiff was rated to be at the following grade levels in the following subtests: letter-word identification (1.7 grade equivalency), reading fluency (1.8), calculation (5.3), math fluency (5.1), spelling (1.7), writing fluency (1.4), passage comprehension (1.5), applied problems (3.8), writing samples (1.7), broad reading (1.7), broad math (4.5), broad written language (1.6), and academic skills (2.2). (Tr. 117-118). On September 9, 2003, the Special Education Department found the following: "[claimant's name omitted] is a 12-year-old 6th grade student who currently functions in the Borderline range cognitively. His achievement in Reading and Writing falls 5 grades below his current grade placement. *Low functioning in these areas has an adverse affect on academic performance in Reading and Written Expression*." (Tr. 121). (emphasis added).

K.M.'s records, especially his reading and spelling scores, indicate that he suffers from a "more than moderate" but "less than extreme" restriction on his ability to acquire and use information. Under the Social Security Regulations ("Regulations"), such a restriction is considered a "marked" restriction. *See* 20 C.F.R. § 416.926a(e). The ALJ's finding that K.M. has a *less than marked* restriction in this domain is not supported by substantial evidence in the record. On remand, the ALJ should more fully develop this issue.

**(2) Attending and Completing Tasks**

The ALJ also determined that Plaintiff has no limitation in attending and completing tasks. (Tr. 22). The ALJ based this determination upon K.M.'s teacher's answers to a school questionnaire completed on January 22, 2004 and upon Dr. Rago's findings. *See id.* Specifically, in the school questionnaire, K.M.'s teacher reported that K.M. had no problem concentrating on things of interest to him. (Tr. 134). Dr. Rago found that K.M.'s rapport, work habits, interest and motivation were adequate; his attention was adequate for testing; and he rarely had to be redirected on tasks. (Tr. 248-252). Dr. Rago also noted that K.M. was not taking any medication for his claimed impairments. (Tr. 248). Based upon the answers to this questionnaire and Dr. Rago's findings, the ALJ determined K.M. had no limitation on his ability to attend and complete tasks. (Tr. 22).

Plaintiff, however, claims that K.M. suffers from a "marked" limitation in his ability to attend and complete tasks. (Doc. No. 10, Page 10). Plaintiff notes that Dr. Rago found K.M.'s "ability to concentrate seems to be impaired as he has difficulty performing informational tests during the examination." (Tr. 251). Plaintiff also notes that K.M. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") by South Arkansas Regional Health and by Dr. Rago. (Doc. No. 10, Page 10). In the record, there is also a finding from one of K.M.'s teachers that K.M. had a "serious detriment" in working independently or staying on task and in completing assignments on

time. (Tr. 108).

To establish a "marked" limitation, a claimant must establish that the impairment was "more than moderate" and "less than extreme." 20 C.F.R. § 416.926a(e). The notation Plaintiff cited from Dr. Rago and the diagnoses from South Arkansas Regional Health and Dr. Rago are not sufficient to establish that K.M. had a "more than moderate" limitation in his ability to attend and complete tasks. Furthermore, the evidence cited by the ALJ from K.M.'s teacher and Dr. Rago's findings provide substantial evidence supporting the ALJ's finding that K.M. had no limitation in this domain; and even if he were found to have *some* limitation in this domain, it should be considered less than marked.

### (3) Interacting and Relating with Others

The ALJ determined K.M. had a "less than marked limitation" in interacting and relating with others. (Tr. 23). The ALJ based this determination upon the following findings: (1) Plaintiff's testimony that he liked school and other students; (2) a teacher's answers to a school questionnaire dated January 22, 2004 where K.M.'s teacher reported that K.M. had no significant problems with communication and social functioning, (3) a teacher's answers to a second school questionnaire dated January of 2005 where K.M.'s teacher reported that "even though claimant was having problems with behavioral functioning, he was willing to get help when he was struggling sometimes"; (4) Dr. Rago's findings on July 14, 2005 where he reported that K.M.'s rapport, work habits, interest and motivation were adequate; and (5) Dr. Rago's finding that K.M. was not taking any medications for his claimed impairments. (Tr. 23).

Plaintiff claims that K.M. has a "marked" limitation in this domain of functioning, claiming that Dr. Rago had diagnosed K.M. with ODD and that the ALJ had accepted this disorder as a severe impairment. (Doc. No. 10, Page 10). Plaintiff also argues that Dr. Rago noted "severe-poor

socialization" and that K.M.'s teachers indicated problems with K.M.'s socialization, especially as it related to females. *See id.* Specifically, one of K.M.'s teachers found that K.M. socialized with "trouble-makers," had chronic and ongoing socialization problems, and had problems "bothering girls." (Tr. 104-106). Another one of K.M.'s teachers found that he suffered from a serious detriment in self-confidence and in acting childish or immature. (Tr. 109). Finally, Dr. Spellmann noted that K.M.'s "[s]ocial contacts are at home, school, with extended family and at the Boy's Club. His father said [claimant's name omitted] does not seem to have any particularly close friends." (Tr. 236).

As noted above, to establish a "marked" limitation, a claimant must establish that the impairment was "more than moderate" and "less than extreme." 20 C.F.R. § 416.926a(e). In this case, the evidence cited by Plaintiff does not establish that K.M. had any more than a moderate limitation in this domain of functioning. The diagnosis by Dr. Rago and other statements regarding Plaintiff's socialization are simply not sufficient to establish Plaintiff suffered from a "marked" limitation in this domain of functioning.

### (4) Moving About and Manipulating Objects

Plaintiff does not claim that K.M. suffers from any limitation in this domain of functioning.

### (5) Caring for Yourself

The ALJ determined that K.M. had no limitation in his ability to care for himself. (Tr. 24-25). The ALJ based this determination upon several findings, including Dr. Rago's findings that K.M.'s interest and motivation were adequate and his grooming and personal hygiene were good. (Tr. 25). The ALJ also based this determination upon K.M.'s testimony that he stopped wetting the prior summer and wanted to join the Army. *See id.*

Plaintiff claims that K.M. has a "marked" limitation in this domain of functioning. (Doc.

No. 10, Pages 10-11). Plaintiff notes that, with this domain, consideration must be given to "how well the child's emotional and physical health an be maintained, including the ability to fulfill wants and needs and cope with stress and change. 20 C.F.R. § 416.926a(k)." *See id.* Plaintiff claims that both Dr. Spellman's and Dr. Rago's findings support his claim. *See id.* Plaintiff claims that Dr. Spellmann assigned K.M. a Global Assessment of Functioning ("GAF") score of 50, and Dr. Rago assessed K.M. with a GAF score of 40. *See id.* Plaintiff claims that both of these scores indicate that Plaintiff has "more than [a] moderate" impairment in this domain of functioning. *See id.*

This Court finds Plaintiff's argument is persuasive and finds that the ALJ improperly determined that Plaintiff suffers from no limitation in his ability to care for himself. Specifically, during his examination on July 14, 2005, Dr. Rago assigned K.M. a GAF score of 40.[2] (Tr. 251). According to the *Diagnostic Statistical Manual IV (TR),* a GAF score of 40 indicates a severe limitation in the ability to perform the basic tasks of daily life. A person with this GAF score suffers from "impairment in speech and communication OR *major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.*" *Diagnostic Statistical Manual IV (TR)* 32 (2000) (emphasis added). The ALJ noted that this score was "indicative of a major impairment in several areas, such as school, family relations, judgment, thinking, or mood." (Tr. 16).

While receiving treatment from the South Arkansas Regional Health Center on February 4, 2005, Plaintiff was assessed with a GAF of 50. (Tr. 246). A GAF score of 50 indicates "serious symptoms OR serious impairment in one of the following: social, occupational, or school functioning." *Diagnostic Statistical Manual IV (TR)* 32 (2000). Even the ALJ himself noted that

---

[2] Plaintiff claims Dr. Spellmann assigned K.M. a GAF score of 50. (Doc. No. 10, Page 11). However, this Court has searched the records in this case and finds no support for this claim.

this score was "indicative of serious to moderate symptoms." (Tr. 15).

These two findings were not further developed by the ALJ. Instead, the ALJ chose to ignore these findings and determined that Plaintiff had no marked impairments in any of his six domains of functioning. (Tr. 12-26). These two low GAF scores should have been fully evaluated by the ALJ. The ALJ's failure to consider Dr. Rago's assessment is particularly troubling since, throughout his opinion, the ALJ relied heavily upon the findings of Dr. Rago.[3] Because there is no other evidence in the record contradicting these findings, this Court finds that the ALJ's determination that Plaintiff does not suffer from a marked limitation in his ability to care for himself is not supported by substantial evidence, and this case must be reversed and remanded for further consideration of this issue.[4]

### (6) Health and Physical Well-Being

Plaintiff does not claim that K.M. suffers from any limitation in this domain of functioning.

## 4. Conclusion:

Based upon the foregoing, this Court finds that the ALJ's determination, that K.M.'s impairments were not functionally equivalent to a Listing, is not supported by substantial evidence and should be reverse and remanded.

**ENTERED** this **31st day of July, 2008.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE

---

[3] The ALJ also chose to ignore Dr. Rago's finding that K.M. suffered from a significant limitation in two or more areas of adaptive functioning. (Tr. 252).

[4] These GAF scores may also be relevant to K.M.'s other five domains of functioning. On remand, the ALJ should consider these GAF scores in relation to all the relevant domains of functioning.